UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMCO INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:12cv2078 TCM |
| | ) |
| SONDRA SIMPSON, PATRICK | ) |
| SIMPSON, and JACOB GUITTAR, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court[1] on the motion for summary judgment [Doc. 31] filed by AMCO Insurance Company ("AMCO" or Plaintiff). Sondra Simpson ("Sondra"),[2] Patrick Simpson ("Patrick"), and Jacob Guittar (collectively, Defendants) filed a brief in opposition to the summary judgment motion,[3] to which Plaintiff filed a reply. The parties also filed statements of fact and exhibits in support of their positions.

**Background**

AMCO filed this lawsuit seeking a declaration that, under the terms of a homeowners insurance policy it issued to the Simpson Defendants, it does not have a duty to defend or

---

[1] This matter is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2] When referring to either of the Simpson Defendants individually, the Court will refer to them by their first name. When referring to those two Defendants collectively, the Court will refer to them as the Simpson Defendants.

[3] The Simpson Defendants adopted Defendant Guittar's response to the summary judgment motion. (See Doc. 38, filed Feb. 4, 2014.)

indemnify the Simpson Defendants, and does not have a duty to make any medical payments, with respect to the death of K.G.,[4] Defendant Guittar's infant daughter, including with respect to claims pursued by Defendant Guittar in a pending wrongful death lawsuit he filed against the Simpson Defendants in state court ("the underlying lawsuit"). The underlying lawsuit arises out of the death on November 11, 2009, of Guittar's infant daughter, K.G., while in the care of the Simpson Defendants at their home. (See Guittar v. Simpson, No. 12AB-CC00091 (Cir. Ct. Franklin Cnty, filed Apr. 1, 2012), Ex. A attached to Pl.'s Statem. Uncontrov. Facts [Doc. 32-1].)

Based on review of the parties' pleadings, as well as the parties' admissions in response to each others' statement of facts, and other available uncontested evidentiary material, the record reveals the following undisputed facts.

Sondra cared for Defendant Guittar's infant daughter, K.G., in the Simpson Defendants' home for approximately three months prior to November 11, 2009, and received monetary compensation for providing that care. (Pl.'s Statem. Uncontr. Facts ¶¶ 1, 2, and 3 [Doc. 32], as admitted by Defts. [Docs. 36 and 38].) On November 11, 2009, Sondra was

---

[4] The litigants have referred to the infant decedent by her name, rather than by her initials, in various materials filed in this case. The Clerk previously placed some of those materials under seal. (See, e.g., parenthetical statements for the docket entries for documents 35 and 36.) Other materials disclosing the minor decedent's name remain available in the public record as they have not been placed under seal yet. The Court will direct the Clerk's Office to place the following materials under seal due to the inclusion of the minor decedent's name in those materials: the complaint [Doc. 1], the summary judgment motion [Doc. 31], the statement of material facts and its attachments [Doc. 32], the memorandum supporting the summary judgment motion [Doc. 33], and the reply supporting the summary judgment motion [Doc. 37]. The litigants are reminded that unsealed or public references to the minor decedent must be by initials rather than by name.

providing care for five-month-old K.G. at the Simpson Defendants' home in Union, Missouri. (Id. ¶ 1.) At approximately 2:30 p.m. that day, Sondra found K.G. unresponsive "in the room in which [K.G.] was left for her nap." (Id. ¶ 4.) K.G. was transported to a "hospital in Washington, Missouri, where she was pronounced dead." (Id. ¶ 5.) The Simpson Defendants admit that "[a]t the time of [K.G.]'s death, Sondra Simpson was providing day care services at her residence to [K.G.] for monetary compensation." (Pl.'s Compl. ¶ 14 [Doc. 1], as admitted by Simpsons in their Answer [Doc. 11].)

On April 12, 2012, Defendant Guittar filed the underlying lawsuit against the Simpson Defendants. (Pl.'s Statem. Uncontr. Facts ¶ 11 [Doc. 32], as admitted by Defts. [Docs. 36 and 38].) In that two-count wrongful death action, Defendant Guittar seeks damages from Sondra (Count I) and Patrick (Count II) due to Sondra's alleged negligence in "wrapp[ing K.G.] in a blanket, plac[ing] her on her back in the middle of a bed[,] surround[ing] her with a pillow[, comforter and blanket]," and then not checking on her for three hours or more, and not "personally or electronically monitor[ing her] while [she] was placed on bedding," which negligent acts allegedly resulted in K.G.'s death. (See Guittar v. Simpson, No. 12AB-CC00091, Complt. ¶¶ 8, 12, and 19 (Cir. Ct. Franklin Cnty, Mo., filed Apr. 1, 2012), Ex. A attached to Pl.'s Statem. Uncontr. Facts [Doc. 32-1].) at 2, 3, and 4, as admitted by Defendants [Docs. 36 and 38].) Defendant Guittar further alleges that the Simpson Defendants' alleged negligence "directly and proximately caused or contributed to cause [K.G.] to suffer severe pain, and an agonizing death"; "caused or contributed to cause" Defendant Guittar "to suffer medical expenses, lost wages, and funeral expenses"; and

deprived Defendant Guittar "of the decedent's valuable consortium, society, companionship, comfort, instruction, guidance, counsel, training, support, love, and affection." (Id. ¶¶ 13 and 20.) K.G. is not related to the Simpson Defendants. (See No. 3 of Defendant Guittar's Responses to Plaintiff's Interrogatories, Ex. B attached to Plaintiff's Statem. Material Facts [Doc. 32-2].)

The Homeowners Insurance Policy AMCO issued to the Simpson Defendants, number HA 0016865353-3, was in effect from April 11, 2009 through April 11, 2010 ("Policy"). (Compl. ¶ 8 [Doc. 1], as admitted by Def'ts in their Answers [Docs. 11 and 12]; Pl.'s Statem. Uncontr. Facts ¶ 6 and Ins. Policy, HA 0016865353-3, Ex. C [Docs. 32 and 32-3], as admitted by Defts. [Docs. 36 and 38].) That Policy [Doc. 32-3] provided in relevant part as follows:

### SECTION II - LIABILITY COVERAGES

**A.  COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we

pay for damages resulting from the "occurrence" has been exhausted by payment of a judgment or settlement.

B. **COVERAGE F - Medical Payments to Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses mean[] reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured" . . . .

\* \* \*

## SECTION II - EXCLUSIONS

\* \* \*

E. **COVERAGE E - Personal Liability and COVERAGE F - Medical Payments to Others.**

Coverages **E** and **F** do not apply to the following:

\* \* \*

2. **"Business"**

   a. "Bodily injury" . . . arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured," whether or not the "business" is owned or operated by an "insured" or employs an "insured."

>           This Exclusion **E.2** applies but is
>           not limited to an act or omission,
>           regardless of its nature or
>           circumstance, involving a service
>           or duty rendered, promised, owed,
>           or implied to be provided because
>           of the nature of the "business."

(Policy at 19 and 21 [Doc. 32-3 at 29 and 31].) The Policy also contained the following definitions.

> **A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to [AMCO].
>
> **B.** In addition, certain words and phrases are defined as follows:
>
> \* \* \*
>
> **2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.
>
> **3.** "Business" means:
>
> **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or
>
> **b.** Any other activity engaged in for money or other compensation, except the following:
>
> **1)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

        **2)**     Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

        **3)**     The rendering of home day care services to a relative of an "insured."

        \*   \*   \*

**5.**    "Insured" means:

    **a.**    You and residents of your household who are:

        **1)**     Your relatives.

        \*   \*   \*

Under both Section **I** and [Section] **II**, when the word an immediately precedes the word "insured," the words an "insured" together mean one or more "insureds."

**6.**    "Insured location" means:

    **a.**    The "residence premises."

        \*   \*   \*

**8.**    Under Section II "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

    **a.**    "Bodily injury."

        \*   \*   \*

 **11.**  "Residence premises" means:

  **a.**  The one family dwelling where you reside;

        \*   \*   \*

  and which is shown as the "residence premises" in
  the Declarations.

(Id. at 1, DEFINITIONS ¶¶ A and B [Doc. 32-3 at 11-13].) The Simpson Defendants' home address is listed in the Policy's Declarations as the "residence premises"; and each of the Simpson Defendants is identified as a named insured in the Policy's Declarations (Id. [Doc. 32-3 at 7].)

  As Defendants point out in their response to the summary judgment motion, the dispositive issue here is whether Sondra's care of K.G. constitutes a "business" as that term is defined in the Policy. (See Mem. Oppos. Mot. Summary J. at 3 [Doc. 35-3].) While Defendants urge this issue is a factual dispute, the facts regarding the care and death of K.G., the allegations in the underlying lawsuit, and the fact that the Policy was in effect at the time of K.G.'s death, are not disputed. The only issue is whether the terms of the Policy's business exception apply to the undisputed circumstances of K.G.'s care and death.

  AMCO argues that the Policy's business exclusion applies either because, in caring for K.G., Sondra was engaged in "a trade, profession or occupation . . . on a full-time, part-time or occasional basis," or because she received monetary compensation for caring for K.G., who was not a relative of the Simpson Defendants. Defendants counter that the

business exclusion does not apply either because Sondra was not engaged in "a trade, profession or occupation" or because Sondra only received a de minimus amount of compensation to care for K.G. Concluding that the Policy's business exclusion applies due to Sondra's receipt of compensation to care for K.G. in the Simpson Defendants' home, the Court will grant AMCO's summary judgment motion without addressing whether the circumstances fall within the "trade, profession or occupation" provision of the Policy's business exclusion.

## Discussion

Summary judgment standard. Rule 56(a) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **MidAmerican Pension and Emp. Benefits Plans Admin. Comm. v. Cox**, 720 F.3d 715, 718 (8th Cir. 2013); see also **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986) (discussing prior Rule 56(c), the predecessor to Rule 56(a) of the Federal Rules of Civil Procedure).

> The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp.[,] 477 U.S. [at] 323 . . . . [The nonmovant then has the opportunity to identify specific portions of the record showing there is a genuine dispute of material fact. See Fed. R. Civ. P. 56(c)(1).] "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" Ricci v. DeStefano, [557 U.S. 557, 586] (2009), quoting Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 . . . (2000), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 . . . (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 . . . (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci, [557 U.S. at 586], quoting Matsushita, 475 U.S. at 587.

**Torgerson v. City of Rochester**, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (en banc) (first alteration in original). The existence of a factual dispute is not enough alone to avoid entry of summary judgment; "rather, the dispute must be outcome determinative under the applicable law." **Hammer v. City of Osage Beach, MO**, 318 F.3d 832, 837 (8th Cir. 2003) (citing Anderson, 477 U.S. at 248). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." **Othman v. City of Country Club Hills**, 671 F.3d 672, 675 (8th Cir. 2012) (citing Anderson, 477 U.S. at 248).

Law Applicable to Insurance Policy. Interpretation of an insurance policy is a matter of state law. **Allstate Ins. Co. v. Blount**, 491 F.3d 903, 908 (8th Cir. 2007). No party contends law other than Missouri law applies to resolve the issues in this case. In interpreting Missouri law, this Court is bound by the decisions of the Missouri Supreme Court. **Id.** If that court has not decided an issue, then the "'[d]ecisions of intermediate state appellate courts are persuasive authority" that this Court follows if "they are the best evidence of what state law is." **Id.** (internal quotation marks omitted) (quoting Minnesota

Supply Co. v. Raymond Corp., 472 F.3d 524, 534 (8th Cir. 2006)).

"Under Missouri law, the insured has the burden of proving coverage, and the insurer has the burden of proving that an insurance policy exclusion applies." **American Family Mut. Ins. Co. v. Co Fat Le**, 439 F.3d 436, 439 (8th Cir. 2006). An insurer's duty to defend is ascertained by comparing the policy's language and the allegations in the lawsuit filed against the insured. **United Fire & Cas. Co. v. Gravette**, 182 F.3d 649, 657 (8th Cir. 1999). No one disputes that the Policy would provide coverage if a Policy exclusion does not apply. Therefore, the Court will only address whether the Policy's business exclusion excludes coverage for claims and medical payments arising out of K.G.'s death, as argued by AMCO. Notably, this Court must narrowly construe a policy's exceptions to, limitations on, and exclusions from coverage. **Roach v. Churchman**, 431 F.2d 849, 851 (8th Cir. 1970).

"Missouri law regards insurance policies as contracts to which the rules of contract construction apply." **Gravette**, 182 F.3d at 658 (internal quotation marks omitted) (quoting Sargent Constr. Co. v. State Auto. Ins. Co., 23 F.3d 1324, 1326 (8th Cir. 1994)). If an insurance policy is unambiguous, the Court "must enforce the express terms of the policy as it is written." **Id.** (internal quotation marks omitted) (quoting Sargent Constr. Co., 23 F.3d at 1326 n.2); accord **Assicurazioni Generali S.P.A. v. Black & Veatch Corp.**, 362 F.3d 1108, 1111 (8th Cir. 2004). "The language of an insurance contract is to be given its ordinary and plain meaning." **Allstate Ins. Co.**, 491 F.3d at 912.

Importantly, when a homeowners' insurance policy specifically sets forth the factors to be considered in deciding whether an insured's day care or babysitting services fall within

a policy provision, the factors set forth in the policy prevail in determining whether or not the provided services are encompassed by the provision. See **Union Mut. Ins. Co. v. Brown**, 809 S.W.2d 144, 146-47 (Mo. Ct. App. 1991) (concluding regular, compensated day care provided by an insured within her home two days a week fell within the "business pursuit" exclusion of the insured's homeowner's policy). In **Brown**, the policy contained the following definition of a business pursuit: "If an insured regularly provides home day care services to a person or persons other than insureds and receives monetary or other compensation for such services, that enterprise is a business pursuit." **Id.** at 145. The Missouri Court of Appeals explicitly recognized that "the policy definition require[d] only that the insured be compensated in order for the [regularly provided home day care] services to fall within the exclusion," and found there was no dispute that the insured received compensation for providing such services. **Id.** at 146. Therefore, those services fell within the policy's business pursuit exclusion and there was no coverage for a child's death occurring while the insured cared for the child in the insured's home. **Id.** The state appellate court rejected an argument that **Western Fire Ins. Co. v. Goodall**, 658 S.W.2d 32 (Mo. Ct. App. 1983), should control the decision whether babysitting or day care services provided in an insured's home fell within the policy's business pursuit exclusion. **Brown**, 809 S.W.2d at 146-47. The state court distinguished **Goodall** upon finding the homeowners' policy in **Goodall** was silent on the question whether a home day care service constituted a business activity. **Brown**, 809 S.W.2d at 147.

Here, the Policy's business exclusion, § E.2 of Section II - Exclusions, states there is no personal liability coverage or obligation to make medical payments to others when "bodily injury" arises out of or in connection with a "business" either conducted from an "insured location" or engaged in by an "insured," regardless of whether the insured owns, operates, or is employed by the business. It is not disputed that K.G.'s death arose out of or in connection with care provided by Sondra for compensation at the Simpson Defendants' residence. It is also not disputed that, under the terms of the Policy, the circumstances of K.G.'s death fall within the definitions of an "occurrence" and "bodily injury"; the Simpson Defendants' residence is the "insured location"; and Sondra and Patrick are each considered to be an "insured." The question is whether Sondra's care of K.G. constituted a business as defined in the Policy.

With few exceptions, the Policy defines a business, in relevant part, as any activity an insured engages in "for money or other compensation." The limited exceptions to that definition do not apply here. The first two exceptions are for unpaid volunteer activities and unpaid home day care activities, and are inapplicable because it is undisputed that Sondra received payment for her care of K.G. Additionally, to fall within the Policy's volunteer activity exception to the definition of a business, any payment for such an activity may only be "for expenses incurred to perform the [volunteer] activity." Here there is no indication that the payment Sondra received for taking care of K.G. was solely for any "expenses incurred" by Sondra to provide that care. To fall within the two "home day care services" exceptions to the Policy's definition of a business, those services must be provided either

-13-

without compensation other than a "mutual exchange of" home day care services or to an insured's relative. There is no intimation in the available record either that any payment Sondra received for taking care of K.G. was in the form of a "mutual exchange of [babysitting or day care] services," or that K.G. was a relative of either Sondra or Patrick. The business definition in the Policy clearly indicates two instances of home day care or babysitting activities that would not preclude coverage, where the services are not compensated and are provided in exchange for similar services provided by another, and where the services are provided to an insured's relative. Neither of those circumstances are present here.

The terms of the Policy's business exclusion apply and preclude coverage for personal liability and medical payments to others, because Sondra, an "insured," received compensation for her care of K.G. in the Simpsons' home, an "insured location," and because, during that care, K.G. sustained "bodily injury" due to an "occurrence" as defined in the Policy. This exclusion encompasses Patrick because the business occurred at the Simpsons' home, an insured location. There are no genuine disputes of material facts and AMCO is entitled to judgment as a matter of law. Due to the application of the business exclusion to the circumstances surrounding K.G.'s care and death at the Simpson Defendants' home, AMCO does not have a duty to defend or indemnify the Simpson Defendants under the Policy and does not have an obligation to make any medical payment to others under the terms of the Policy.

Defendants argue that the situation here does not fall within the Policy's definition of

a business because Sondra only received a "de minimus payment" for her care of K.G., noting that she did not report her compensation on her income taxes.  Importantly, an insured's failure to report on her tax return income received for home babysitting or day care services does not determine whether those services constitute a business for purposes of insurance coverage.  **Millers' Mut. Ins. Ass'n of Il. v. Pennington**, 888 S.W.2d 406, 407-08 (Mo. Ct. App. 1994).  Furthermore, the Policy does not by its terms set forth any guideline regarding the amount of compensation an insured must receive to establish that a compensated activity  constitutes a business for purposes of the Policy.  Therefore, the receipt of any amount of compensation, whether de minimus or not, renders an activity a "business" for purposes of the Policy, unless that activity or its compensation falls within one of the three exceptions specified in the Policy as limits on the type of activity that constitutes a "business."  Neither the fact that Sondra may have failed to report on her income tax returns any compensation she received for caring for K.G., nor her characterization of that compensation as de minimus affects the decision whether or not the care she provided for K.G. constitutes a business under the Policy.

Defendants direct this Court's attention to **Goodall**, supra, for guidance on whether or not home babysitting or day care services fall within the coverage of the Policy.  As the state appellate court in **Brown** found, this Court concludes the **Goodall** decision is distinguishable because, unlike the Policy at issue in this case, the insurance policy in **Goodall** did not expressly address such services.  See **Brown**, 809 S.W.2d at 147.

The Court is also not persuaded by Defendants' position that the business exclusion

is inapplicable because Sondra was not babysitting any other children when she was caring for K.G.; she was not soliciting other mothers to have her watch their children; she did not have any partners or anyone helping her out; and she did not believe she was running a business. None of those circumstances alter the undisputed fact that she was paid to care for K.G. in her home. None of those circumstances take her care of K.G. outside the Policy's business definition because her activities: were not volunteer activities for which she received money only to pay "for expenses to perform the activit[ies]," as required by the exception to the Policy's definition of business in § B.3.b.1; were not "home day care services" for which she did not receive compensation "other than the mutual exchange of such services," as required by the exception to the Policy's definition of business in § B.3.b.2; and were not "[t]he rendering of home day care services to a relative" of her or Patrick, as required by the exception to the Policy's definition of business in § B.3.b.3.

## CONCLUSION

Having found no genuine dispute of material fact and that Sondra's compensated care of K.G. constitutes a business falling within the Policy's business exclusion so as to entitle AMCO to entry of judgment in its favor, AMCO's motion for summary judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of the Court shall place and maintain under seal the following documents filed in this case: Documents 1, 31, 32 and its attachments, 33, and 37.

**IT IS FURTHER ORDERED** that AMCO's motion for summary judgment [Doc. 31] is **GRANTED.**

An appropriate Judgment will accompany this Memorandum and Order.

/s/Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of April, 2014.